1

HILGERS GRABEN PLLC
Michael Merriman, Cal. Bar No. 234993

2
mmerriman@hilgersgraben.com
655 West Broadway, Suite 900

3
San Diego, CA 92101
Telephone: (619) 369-6232

4
*Attorney for the Plaintiff*
*and the Proposed Classes*

5
*(additional attorneys on signature page)*

6

7

8
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

9

10
DR. DERRICK ADAMS, on behalf of
himself and those similarly situated,

Case No. 2:23-815

11
Plaintiff,

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF**

12

13
v.

**(I) THE SHERMAN ACT,**
**15 U.S.C. § 1, ET SEQ., AND**

14
EXPERIAN INFORMATION
SOLUTIONS, INC., EQUIFAX INC.,

**(II) THE CARTWRIGHT ACT,**
**CAL. BUS. & PROF. CODE**
**§ 16720, ET SEQ.**

15
AND TRANSUNION,

16
Defendants.

**DEMAND FOR JURY TRIAL**

17

18

19
Plaintiff Dr. Derrick Adams, on behalf of himself and all those similarly situated,

20
brings this action against Defendants Experian Information Solutions, Inc. ("Experian"),

21
Equifax Inc. ("Equifax"), and TransUnion ("TransUnion") (collectively, the "Three Credit

22
Reporting Agencies") for violations of the Sherman Antitrust Act and California's

23
Cartwright Act.

24
Dr. Adams, on behalf of himself and all those similarly situated, demands a trial by

25
jury on all counts for which a right to trial by jury is allowed and alleges as follows in

26
support of this Complaint:

27

28

## JURISDICTION

1.       Dr. Adams's claims arise under Sherman Act Section 1 (15 U.S.C. § 1) and the Cartwright Act (Cal. Bus. & Prof. Code § 16720, *et seq.*). Dr. Adams seeks damages and injunctive relief under Clayton Act Sections 4 and 16 (15 U.S.C. §§ 15, 26). Dr. Adams also seeks damages and injunctive relief under the Cartwright Act (Cal. Bus. & Prof. Code § 16750).

2.       This Court has subject-matter jurisdiction over Dr. Adams's Sherman Act claim under 15 U.S.C. § 15, because the claim arises from injuries Dr. Adams suffered by reason of conduct forbidden in the antitrust laws; under 28 U.S.C. § 1331, because the claim arises under the laws of the United States; and under 28 U.S.C. § 1337(a), because the claim arises under an Act of Congress regulating commerce or protecting trade and commerce against restraints of trade. This Court has supplemental jurisdiction of the state law claim under 28 U.S.C. § 1367(a).

3.       This Court has personal jurisdiction over each of the Defendants because each of the Defendants: performed the trade that was illegally restrained in this State, including in this District; transacted business in this State, including in this District; had substantial contacts within this State, including in this District; and/or were engaged in an unlawful restraint of trade which injured persons residing in, located in, and doing business in this State, including in this District.

## NATURE OF THE ACTION

4.       In very public fashion, the Three Credit Reporting Agencies announced a formal agreement among themselves to restrain trade by refusing to report unpaid medical bills under $500 on consumer credit reports. Indeed, it is rare to see such a transparent conspiracy. While the Defendants celebrated their joint action as benefitting patients, the agreement represents a categorical violation of the Sherman Act and the Cartwright Act, and its imposition not only illegally restrains trade, but will also diminish access to medical care by driving providers out of certain markets.

5.      The Three Credit Reporting Agencies' conspiracy to devalue their credit reports, by agreeing not to report unpaid medical bills under $500, targets medical providers and has inevitably harmed them. Medical providers now have a more costly path to collect payment on unpaid medical bills, if they can feasibly collect at all. Defendants' conduct also places individual medical providers, such as Dr. Adams, at a severe financial disadvantage compared to larger and more expensive medical practices, such as hospitals.

6.      Medical providers submit information about unpaid medical bills to credit reporting agencies in what had been a mutually beneficial transaction: credit reporting agencies received information about unpaid debts, which made their reports more valuable to those purchasing the credit reports, and medical providers received help persuading patients to pay their medical bills, by virtue of patients' desire to avoid the negative impact of having unpaid medical bills on their credit reports.

7.      Experian, Equifax, and TransUnion could have continued competing in terms of the value of their service to medical practices by deciding independently what information to report on consumer credit reports.

8.      Instead, the Three Credit Reporting Agencies have conspired to restrain competition in this market by agreeing not to report unpaid medical debts under $500 on consumer credit reports. Defendants' services in the relevant market are now equally devalued to medical providers such as Plaintiff Dr. Adams.

9.      The market Defendants have restrained has a massive economic footprint. The U.S. Consumer Financial Protection Bureau ("CFPB") estimated an "outstanding balance of about ***$88 billion in medical debt collections*** on consumer credit reports" as of 2021.[1] The CFPB also has "estimate[d] that ***22.8 million people will have at least one medical collection removed*** from their credit reports when all medical collections less than $500 are removed."[2]

---

[1] CFPB, *Medical Debt Burden in the United States* 6 n.10 (Feb. 2022) (emphasis added), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_medical-debt-burden-in-the-united-states_report_2022-03.pdf.

[2] CFPB, *Data Point: Consumer Credit and the Removal of Medical Collections from Credit Reports* 2 (Apr.

**CLASS ACTION COMPLAINT**
*Adams v. Experian Information Solutions, Inc.*

10.     There are more than one million active physicians in the United States, along with numerous other medical providers of different types. Their unpaid bills under $500 have been removed from consumer credit reports and will no longer be reported by the Three Credit Reporting Agencies.

11.     There are only three significant credit reporting agencies who participate in the market for receiving medical-debt information for purposes of reporting it on consumer credit reports: Experian, Equifax, and TransUnion. All three agreed, and issued a *joint* press release to announce, that they would be removing, and no longer reporting, medical debts under $500.

12.     This conspiracy violates Section 1 of the Sherman Act and Section 16720 of the Cartwright Act.

13.     Dr. Adams and many thousands of other medical providers have suffered losses as a direct and proximate result of Defendants' unlawful conduct and are entitled to relief including actual damages, treble damages, equitable relief, and reasonable attorneys' fees and costs.

## **VENUE**

14.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (codified at 15 U.S.C. § 22) and 28 U.S.C. § 1391(b)–(d) because a substantial part of the events giving rise to Dr. Adams's claims occurred in this District, a substantial portion of the affected interstate trade and commerce has been carried out in this District, and one or more of the Defendants is licensed to do business in, has agents in, or is found to transact business in, this District.

## **PARTIES**

15.     Plaintiff Dr. Derrick Adams resides in Placer County, California. He works and has an ownership share in the medical practice Twelve Bridges Dermatology, located at 2295 Fieldstone Drive, Suite 150, Lincoln, CA 95648.

---

2023) (emphasis added), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_consumer-credit-removal-medical-collections-from-credit-reports_2023-04.pdf.

**CLASS ACTION COMPLAINT**
*Adams v. Experian Information Solutions, Inc.*

16.     Defendant Experian Information Solutions, Inc. is an Ohio corporation with its principal place of business in Costa Mesa, California.

17.     Defendant Equifax Inc. is a Georgia corporation with its principal place of business in Atlanta, Georgia.

18.     Defendant TransUnion is a Delaware corporation with its principal place of business in Chicago, Illinois.

19.     All conditions precedent to the bringing of this action have occurred, or Defendants have waived them.

## FACTUAL BACKGROUND

### Dr. Adams's Medical Practice

20.     Dr. Adams is the sole doctor in a medical practice in the small city of Lincoln, California, near Sacramento. He specializes in dermatology, in which he completed his residency and received certification from the American Academy of Dermatology and the American Osteopathic College of Dermatology. Before his residency, he served in the U.S. Air Force as a Captain and General Medical Officer at the David Grant Medical Center, Travis Air Force Base in Fairfield, California.

21.     Dr. Adams's current practice, called Twelve Bridges Dermatology, opened in April 2022. He diagnoses and treats skin cancer, psoriasis, eczema, acne, autoimmune disorders, and other skin conditions.

### How Dr. Adams's Medical Practice Bills Patients and Collects Unpaid Bills

22.     Dr. Adams's practice sends a bill to each patient, after treating them, for the portion of the cost for which the patient is financially responsible after insurance is applied. The majority of the bills Dr. Adams's practice has sent to patients, and will continue to send, are for an amount under $500.

23.     Dr. Adams's practice has sent bills for amounts under $500 that have not yet been paid.

24.     Thousands of other medical practices have sent bills to millions of patients for an amount under $500 that remain unpaid. The CFPB "estimate[d] that 22.8 million

people will have at least one medical collection removed from their credit reports when all medical collections less than $500 are removed."[3]

25.     If patients do not pay their bills, Dr. Adams's practice uses third-party accounts-receivable services as its agent to attempt to collect the unpaid bills.

26.     Accounts-receivable services, as one of their options for incentivizing patients to pay their bills, report unpaid medical bills to credit reporting agencies. Based on information and belief, accounts-receivable services have reported unpaid medical bills from Dr. Adams's practice to the Three Credit Reporting Agencies.

27.     Thousands of other medical practices in California and across the United States follow a similar practice of using accounts-receivable services to collect unpaid bills, and those accounts-receivable services report unpaid medical bills to the Three Credit Reporting Agencies.

28.     Historically, the risk that an unpaid medical bill under $500 could be reported on a consumer's credit report incentivized the patient to pay the bill. Patients understood that an unpaid bill listed on their credit report harmed their credit score, which in turn reduced their access to credit, increased their costs to obtain that credit, and decreased options for other financial transactions such as leasing a car.

29.     The Three Credit Reporting Agencies recognize they wield this power, and are aware of the resulting value of their reporting services to medical providers like Dr. Adams and other members of the proposed classes. For example, Equifax states on its website, "Reporting loans to the CRAs can help incentivize stronger payment performance. Since consumers today understand that their payment behavior on loans reported to the CRA[]s matters. This often drives them to pay those loans on time vs. delaying or not paying those that are not reported to their credit file."[4]

---

[3] CFPB, *Data Point: Consumer Credit and the Removal of Medical Collections from Credit Reports* 2 (Apr. 2023), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_consumer-credit-removal-medical-collections-from-credit-reports_2023-04.pdf.
[4] Bob Hofmann, *Major Benefits of Credit Reporting for Both Consumers and Lenders* (Feb. 28, 2023) (emphasis removed), https://www.equifax.com/business/blog/-/insight/article/major-benefits-of-credit-reporting-for-both-consumers-and-lenders/.

**CLASS ACTION COMPLAINT**

*Adams v. Experian Information Solutions, Inc.*

30.     Dr. Adams intends, and prefers, that accounts-receivable services continue to report his patients' unpaid bills under $500 to the Three Credit Reporting Agencies. But currently that reporting is rendered pointless because, according to the conspiracy, the Three Credit Reporting Agencies have agreed not to include such unpaid bills in consumer credit reports.

**The Conspiracy by the Three Credit Reporting Agencies**

31.     On March 18, 2022, the Three Credit Reporting Agencies jointly announced via press release the following "joint measures":

> The three nationwide credit reporting agencies (NCRAs) – Equifax (NYSE: EFX), Experian (LON: EXPN), and TransUnion (NYSE: TRU) – today announced significant changes to medical collection debt reporting to support consumers faced with unexpected medical bills. These joint measures will remove nearly 70% of medical collection debt tradelines from consumer credit reports, a step taken after months of industry research.
>
> . . . .
>
> In the first half of 2023, Equifax, Experian and TransUnion will also no longer include medical collection debt under at least $500 on credit reports.
>
> The companies' CEOs provided a joint statement on the decision to change medical collection debt reporting:
>
> "Medical collections debt often arises from unforeseen medical circumstances. These changes are another step we're taking together to help people across the United States focus on their financial and personal wellbeing," said Mark W. Begor, CEO Equifax; Brian Cassin, CEO Experian; and Chris Cartwright, CEO TransUnion. "As an industry we remain committed to helping drive fair and affordable access to credit for all consumers."
>
> For more information, please visit: Equifax, Experian, and TransUnion.[5]

32.     The announcement was widely publicized, including nationwide by the federal government. For example, in April 2022, the CFPB reported that "Equifax,

---

[5] PR Newswire, *Equifax, Experian, and TransUnion Support U.S. Consumers With Changes to Medical Collection Debt Reporting* (Mar. 18, 2022), https://www.prnewswire.com/news-releases/equifax-experian-and-transunion-support-us-consumers-with-changes-to-medical-collection-debt-reporting-301505822.html.

Experian, and TransUnion issued a joint statement to announce . . . . that starting in July 2023, they will not include information furnished to them for medical bills in collection for amounts of $500 or less."[6]

33.     On April 11, 2023, the Three Credit Reporting Agencies jointly announced via press release that they had effectuated their joint commitment from 2022 not to report medical collection debt under $500:

> Equifax® (NYSE: EFX), Experian (LON:EXPN), and TransUnion (NYSE:TRU) are jointly announcing that medical collection debt with an initial reported balance of under $500 has been removed from U.S. consumer credit reports. With this change, now nearly 70 percent of the total medical collection debt tradelines reported to the Nationwide Credit Reporting Agencies (NCRAs) are removed from consumer credit files. This change reflects a commitment made by the NCRAs last year.

> "Our industry plays an important role in the financial lives of consumers. We understand that medical debt is generally not taken on voluntarily and we are committed to continuously evolving credit reporting to support greater and responsible access to credit and mainstream financial services," said Mark W. Begor, CEO Equifax; Brian Cassin, CEO Experian; and Chris Cartwright, CEO TransUnion. "We believe that the removal of medical collection debt with an initial reported balance of under $500 from U.S. consumer credit reports will have a positive impact on people's personal and financial well-being."[7]

34.     The Three Credit Reporting Agencies have removed unpaid medical debt under $500 from consumer credit reports, and stopped reporting it. This joint action was widely reported to the public, including by the federal government.[8]

---

[6] CFPB, *Know your rights and protections when it comes to medical bills and collections* (Apr. 11, 2022), https://www.consumerfinance.gov/about-us/blog/know-your-rights-and-protections-when-it-comes-to-medical-bills-and-collections/.

[7] PR Newswire, *Equifax, Experian and TransUnion Remove Medical Collections Debt Under $500 From U.S. Credit Reports* (Apr. 11, 2023), https://www.prnewswire.com/news-releases/equifax-experian-and-transunion-remove-medical-collections-debt-under-500-from-us-credit-reports-301793769.html.

[8] CFPB, *Have medical debt? Anything already paid or under $500 should no longer be on your credit report* (May 8, 2023), https://www.consumerfinance.gov/about-us/blog/medical-debt-anything-already-paid-or-under-500-should-no-longer-be-on-your-credit-report/#:~:text=The%20three%20nationwide%20credit%20reporting,all%20medical%20collections%20under%20%24500.

35.     Before this joint action, the Three Credit Reporting Agencies could have chosen independently whether to include, and how to account for, medical debts under $500 in the consumer credit reports they each publish.

36.     Because the Three Credit Reporting Agencies conspired together to stop reporting medical debts under $500, consumer credit reports from all three of these agencies have lost value to medical providers like Dr. Adams.

37.     The Three Credit Reporting Agencies are the only significant participants in the market for receiving medical debt information for the purpose of reporting it on consumer credit reports. Dr. Adams has no feasible alternative to provide information about unpaid medical bills under $500 for the purpose of including them on consumer credit reports.

38.     If one of the Three Credit Reporting Agencies had decided to stop reporting medical debts under $500, Dr. Adams could have chosen to provide information to the other two agencies for the purpose of reporting medical debts owed to him. Instead, the Three Credit Reporting Agencies made it safe for themselves—but anticompetitive for the market—by jointly deciding not to report these debts.

**<u>Anticompetitive Effect of the Conspiracy</u>**

39.     The effect of this conspiracy will be massive and will ripple through the Unites States for years to come.

40.     Dr. Adams's practice has issued, and will continue to issue, many bills under $500. Based on information, belief, and common-sense logic, patients will pay fewer of their bills under $500 if patients know those unpaid bills will not be reported on their credit reports. As Equifax's website explains in the similar context of loans, reporting an unpaid loan on a credit report "often drives [consumers] to pay those loans on time vs. delaying or not paying those that are not reported to their credit file."[9] Therefore, Defendants'

---

[9] Bob Hofmann, *Major Benefits of Credit Reporting for Both Consumers and Lenders* (Feb. 28, 2023) (emphasis removed), https://www.equifax.com/business/blog/-/insight/article/major-benefits-of-credit-reporting-for-both-consumers-and-lenders/.

**CLASS ACTION COMPLAINT**
*Adams v. Experian Information Solutions, Inc.*

conspiracy has devalued their service by removing an important incentive for patients to pay medical providers, including Dr. Adams.

41.     The scope of monetary effect from the conspiracy is massive. The conspiracy not to report medical debt under $500 will affect the repayment of tens of millions of medical bills. CFPB "estimate[d] that 22.8 million people will have at least one medical collection removed from their credit reports when all medical collections less than $500 are removed."[10] Using the CFPB's estimate, if each of the 22.8 million people had just one unpaid medical bill that averaged $100, the conspiracy would affect $2.28 billion in money owed to medical providers.

42.     The effect is likely much larger. As the Washington Post has reported about Defendants' decision not to report unpaid medical bills: "To grasp why this removal is so important, you have to understand the gravity of these small-dollar debts. It's not just one bill under $500. People are often receiving multiple bills from different health-care providers."[11] The CFPB has estimated a total "outstanding balance of about $88 billion in medical debt collections on consumer credit reports," based on data from 2021, and the CFPB identified another study that estimated an outstanding balance of $140 billion.[12]

43.     Defendants' conspiracy harms medical providers. By not reporting unpaid medical bills on consumer credit reports, the Three Credit Reporting Agencies have eliminated a valuable tool that medical providers use to incentivize patients to pay their bills. Without this tool, medical providers must resort to costlier methods to receive payment of their bills, such as employing additional time of in-house staff and third-party accounts-receivable services. These costlier methods have not succeeded, and will not succeed, in achieving the same rate of payment. Patients no longer have the incentive to

[10] CFPB, *Data Point: Consumer Credit and the Removal of Medical Collections from Credit Reports* 2 (Apr. 2023), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_consumer-credit-removal-medical-collections-from-credit-reports_2023-04.pdf.
[11] Michelle Singletary, *Finally, medical debt under $500 has been removed from credit reports* (Apr. 12, 2023), https://www.washingtonpost.com/business/2023/04/12/medical-debt-credit-reports/.
[12] CFPB, *Medical Debt Burden in the United States* 6 n.10 (Feb. 2022), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_medical-debt-burden-in-the-united-states_report_2022-03.pdf.

avoid unpaid medical bills appearing on their credit reports, because of Defendants' conspiracy. Defendants have not agreed to remove from credit reports the unpaid bills for any other types of debt, such as car payments, home improvement, credit cards, or conspicuous consumption. Rather, Defendants intentionally have targeted medical providers.

44.    Dr. Adams's medical practice, like that of many medical providers, is a small business. He frequently performs services that cost patients less than $500 out of pocket. The conspiracy has a significant effect on his business, as a trade association's letter to the Three Credit Reporting Agencies warned:

> It is worth noting that these are the doctors who most rely on third-party debt collectors to recover the rightfully owed money for services they provided because they do not have the infrastructure for in-house collections. The amounts they collect often represent whether the doctor makes a profit or incurs a loss in running his or her business, including employing others. It might be possible for one bill for less than $500 to be written-off by a small Provider, but dozens of bills for this amount could take away from significant operational costs at a practice. Most Providers are just that: Providers, and not sophisticated financial institutions like banks. These are small businesses providing compassionate care to their community and this change will cause further lack of recourse to be paid for their services.[13]

45.    Defendants' conspiracy has harmed Dr. Adams and other medical providers by devaluing the benefit of the transaction between medical providers and credit reporting agencies. Dr. Adams now receives no benefit from the Three Credit Reporting Agencies in return for providing information about unpaid medical bills under $500. And Dr. Adams now has a costlier path to collect payment on unpaid medical bills, if he can feasibly collect at all.

46.    In addition to the harm to Dr. Adams and other medical providers, Defendants' conspiracy causes significant harms to society.

---

[13] *See, e.g.*, Letter from Scott Purcell, CEO, ACA Int'l, to Mark Begor, CEO, Equifax, *et al.* (Mar. 23, 2022), https://www.acainternational.org/wp-content/uploads/2022/03/ACA-Letter-to-CRAs-Final-1.pdf.

47.     Although Defendants jointly announced their conspiracy as a positive development for patients, a profound *harm* to patients will ripple out from this conspiracy: limited access to medical care. The harder it is for medical providers to recover unpaid bills, the more likely the resulting financial difficulties will force medical providers to stop providing service in locations where patients are less likely to pay. This will disproportionately affect lower-income patients. As one trade association warned the Three Credit Reporting Agencies:

> If [medical providers] cannot collect on their accounts and therefore incur ongoing losses that take away from running their business, they will not be able to provide these important services to our communities. . . . Basic economic principles make clear that low-income Americans will be harmed most when Providers constrict services, leading to higher costs and less access to medical care for all consumers.[14]

48.     Defendants' conspiracy also harms lenders. Defendants' credit reports are less valuable to potential lenders now that they do not disclose all of consumers' unpaid debts. The Three Credit Reporting Agencies could have continued competing for lenders' business by reporting the most thorough information each could obtain about consumers' unpaid debts. Instead, the Three Credit Reporting Agencies eliminated that competition as to medical debt under $500, equally devaluing their products, by conspiring jointly not to report that specific category and magnitude of debts. This further supports that Defendants' joint action, which harms medical providers, did not flow from altruism but from protectionism.

## **RELEVANT MARKET**

49.     This lawsuit concerns one relevant market: the market for providing and receiving medical-debt information for the purpose of reporting it on consumer credit reports. Medical providers, such as Dr. Adams, provide medical-debt information to credit reporting agencies in return for the agencies' reporting it on consumer credit reports. The relevant market does not include information about non-medical debts.

---

[14] *Id.*

50.     The geographic scope of the relevant market is the United States. Each Defendant is involved in the relevant market throughout the United States, including across California.

51.     Medical providers in the United States, including in California, have provided information about unpaid medical bills under $500 to credit reporting agencies in what had been a mutually beneficial transaction: Credit reporting agencies received information about unpaid debts, which made their reports more valuable to those purchasing the credit reports, and medical providers received help incentivizing patients to pay their medical bills, which came from patients' desire to avoid the negative impact on their credit report of having unpaid medical bills.

52.     There are only three significant credit reporting agencies who participate in the market for providing and receiving medical-debt information for purposes of reporting it on consumer credit reports: Experian, Equifax, and TransUnion.

53.     Experian, Equifax, and TransUnion jointly referred to themselves as "[t]he three nationwide credit reporting agencies (NCRAs)" in the press release announcing the conspiracy.[15] And each Defendant's website identifies only the three Defendants when referring to credit reporting agencies.[16]

54.     The federal government has recognized that Defendants "play an outsized role in Americans' economic lives," noting that they "cover more than 1.6 billion credit accounts for over 200 million adults every month."[17] The CFPB identifies only Defendants

---

[15] Business Wire, *Equifax, Experian, and TransUnion Support U.S. Consumers With Changes to Medical Collection Debt Reporting* (Mar. 18, 2022), https://www.businesswire.com/news/home/20220318005244/en/Equifax-Experian-and-TransUnion-Support-U.S.-Consumers-With-Changes-to-Medical-Collection-Debt-Reporting.

[16] *See* Equifax, https://www.equifax.com/personal/education/credit/score/ ("the three nationwide credit reporting agencies, Equifax®, Experian®, and TransUnion®"); Experian, https://www.experian.com/consumer-products/experian-equifax-transunion-credit-report-and-score.html ("the three credit bureaus . . . Experian, Equifax®, and TransUnion®"); TransUnion, https://www.transunion.com/credit-reporting-agencies ("There are three credit agencies: TransUnion, Equifax, and Experian.").

[17] Karen Andre, *Report illustrates how the big three credit reporting companies are giving consumers the runaround*, CFPB (Feb. 11, 2022), https://www.consumerfinance.gov/about-us/blog/report-illustrates-how-big-three-credit-reporting-companies-are-giving-consumers-the-runaround/.

when it identifies the Nationwide Consumer Reporting Agencies ("NCRAs").[18] Similarly, the federal government's public website about credit reports lists only the three Defendants as "the three credit reporting agencies."[19] That website provides a hyperlink to AnnualCreditReport.com, "the only website authorized by the federal government to issue free, annual credit reports from the three CRAs." AnnualCreditReport.com prominently states on its homepage that it is "brought to you" by Experian, Equifax, and TransUnion.[20]

55.     Members of Congress have recognized that the credit reporting industry is an "oligopoly" controlled by Defendants and have lamented the lack of competition in the market.[21] During a 2019 hearing before the House Financial Services Committee, lawmakers expressed concern to Defendants' CEOs, who appeared as witnesses, about eliminating negative information from credit reports. In response, TransUnion's then-CEO, James Peck, "admitted that there could be 'unintended consequences' with eliminating certain data from credit reports and scores."[22]

56.     As the only NCRAs, Defendants are the only significant participants in the market for medical debt information for the purpose of reporting it on consumer credit reports. There are no other credit reporting agencies to which medical providers can feasibly turn with their information about unpaid medical bills under $500. Medical providers like Dr. Adams are now suffering the consequences of Defendants' conspiracy to devalue their credit reports by agreeing not to report unpaid medical bills under $500.

---

[18] CFPB, *Annual report of credit and consumer reporting complaints, an analysis of complaint responses by Equifax, Experian, and TransUnion* 3 (Jan. 2022), https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2022-01.pdf; CFPB, *Annual report of credit and consumer reporting complaints, an analysis of complaint responses by Equifax, Experian, and TransUnion* (Jan. 2023), https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2023-01.pdf.
[19] USA.gov, *Learn about your credit report and how to get a copy* (last updated May 25, 2023), https://www.usa.gov/credit-reports.
[20] Annual Credit Report.com (Last Visited Aug. 15, 2023), https://www.annualcreditreport.com/index.action.
[21] Neil Haggerty, *House banking panel bemoans credit bureaus' 'oligopoly'* (Feb. 26, 2019), https://financialservices.house.gov/news/documentsingle.aspx?DocumentID=407266.
[22] *Id.*

## CLASS REPRESENTATION ALLEGATIONS

57.     Plaintiff Dr. Adams brings his claims against Defendants on behalf of similarly situated persons under Fed. R. Civ. P. 23(a) and 23(b)(3), and seeks certification of two classes defined as follows:

58.     **Medical Providers Nationwide Class** (hereinafter the "Nationwide Class"): For Count I (violation of the Sherman Act), Dr. Adams proposes that the Nationwide Class be defined as follows: all providers of medical services in the United States who have uncollected bills under $500 for medical-related services.

59.     **Medical Providers California Class** (hereinafter the "California Class"): For Count II (violation of California's Cartwright Act), Dr. Adams proposes that the California Class be defined as follows: all providers of medical services in California who have uncollected bills under $500 for medical-related services.

60.     The class period begins on March 18, 2022, the date of Defendants' joint announcement of their conspiracy to remove, and not to report in the future, unpaid medical bills under $500.

61.     Dr. Adams reserves the right to amend these definitions as discovery proceeds and to conform to the evidence.

62.     Excluded from the Classes are Defendants, their agents, representatives, and employees; any judge to whom this action is assigned; and any member of that judge's staff and immediate family.

63.     While the exact number of Nationwide Class Members is unknown at this time, based on information and belief, in the United States there are just over one million licensed physicians,[23] more than 200,000 professionally active dentists,[24] more than 45,000

[23] Aaron Young et al., *FSMB Census of Licensed Physicians in the United States, 2020*, Vol. 107 No. 2 J. Medical Regulation 57 (2021), https://www.fsmb.org/siteassets/advocacy/publications/2020-physician-census.pdf.
[24] Am. Dental Ass'n, *U.S. Dentist Demographic Dashboard* (2022), https://www.ada.org/resources/research/health-policy-institute/us-dentist-demographics.

doctors of optometry,[25] and more than 70,000 chiropractors.[26] These medical providers, and other types of medical providers affected by Defendants' conspiracy, are potential members of the Nationwide Class.

64.     While the exact number of California Class Members is unknown at this time, based on information and belief, in California there at least 120,000 physicians with active California licenses who practice in the state,[27] more than 30,000 professionally active dentists,[28] almost 7,000 doctors of optometry,[29] and more than 12,000 chiropractors.[30] These medical providers, and other types of medical providers in California who were affected by Defendants' conspiracy, are potential members of the California Class.

65.     Because the potential members of the Nationwide Class and of the California Class (collectively, the "Class Members") are so numerous, individual joinder of these members is impracticable.

66.     The Class Members will be ascertainable through discovery including Defendants' data and other records.

67.     There are common questions of law and fact shared by Dr. Adams and each Class Member. The common questions of law and fact include the following:

        a.   whether Defendants entered an agreement which restrained competition;

        b.   whether the agreement is unlawful;

        c.   whether Defendants' conduct injured medical providers; and

        d.   the appropriate nature of class-wide injunctive or other equitable relief.

---

[25] Health Policy Institute, *County Data Demonstrates Eye Care Access Nationwide* (Apr. 2018), https://www.aoa.org/AOA/Documents/Advocacy/HPI/County%20Data%20Demonstrates%20Eye%20Care%20Access%20Nationwide.pdf.
[26] Am. Chiropractic Ass'n, *Key Facts and Figures About the Chiropractic Profession,* https://www.acatoday.org/news-publications/newsroom/key-facts.
[27] Janet Coffman & Margaret Fix, *The State of California's Physician Workforce* (June 2021), https://www.ucop.edu/uc-health/_files/prop-56/annual-review-report-june2021.pdf [sic].
[28] Nat'l Library of Medicine, *Health, United States, 2019 [Internet] Table 42* (2020), https://www.ncbi.nlm.nih.gov/books/NBK569311/table/ch3.tab42/.
[29] Healthforce Ctr. at UCSF, *Optometry Workforce and Education in California* (July 31, 2020), https://healthforce.ucsf.edu/sites/healthforce.ucsf.edu/files/publication-pdf/Optometry%20Workforce%20and%20Education%20in%20California.pdf.
[30] Bram B. Briggance, *Chiropractic Care in California* (2003), https://healthforce.ucsf.edu/sites/healthforce.ucsf.edu/files/publication-pdf/5.%202003-06_Chiropractic_Care_in_California.pdf.

68.     Certification of the Classes under Fed. R. Civ. P. 23(a) and 23(b)(3) is appropriate as to the members of the putative classes in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. All Class Members were subject to the same conduct by Defendants, as such conduct was announced jointly by Defendants as their standard business practice to be applied consistently nationwide.

69.     A class action will cause an orderly and expeditious administration of claims by the members of the Classes, will foster economies of time, effort, and expenses, and will ensure uniformity of decisions.

70.     Dr. Adams's claims are typical of the claims of the Classes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) because they are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

71.     Dr. Adams is an adequate representative of the Classes because his interests do not conflict with the interests of other class members, and he will fairly and adequately protect their interests. Additionally, Dr. Adams is cognizant of his responsibility as a class representative and he has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Dr. Adams's counsel has extensive experience in class action litigation.

72.     The Class Members have suffered the same or similar injury as Dr. Adams, including actual damages.

**CLASS ACTION COMPLAINT**
*Adams v. Experian Information Solutions, Inc.*

## COUNT I

## VIOLATIONS OF THE SHERMAN ANTITRUST ACT,
## 15 U.S.C. § 1, *ET SEQ.*

73.     Dr. Adams re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1–72 as if fully set forth herein.

74.     This claim is brought against all Defendants by Dr. Adams individually and on behalf of the Nationwide Class.

75.     Defendants entered into and engaged in unlawful concerted action that unreasonably restrained trade in violation of Section 1 of the Sherman Act (codified at 15 U.S.C. § 1).

76.     Defendants agreed not to report unpaid medical bills under $500 on consumer credit reports.

77.     Defendants' agreement restrained trade in the market for providing and receiving medical-debt information for the purpose of reporting it on consumer credit reports. Defendants no longer compete between themselves as to whether to include, and how to account for, medical debts under $500 on the consumer credit reports they each publish. Defendants' agreement devalues, in an equal way, the service that the Defendants had each provided to Dr. Adams and other medical providers.

78.     Defendants' agreement constitutes a *per se* violation of the Sherman Act, and is violation of the Sherman Act according to the Rule of Reason.

79.     Defendants' agreement intentionally, directly, and proximately caused the reduction in value of the service that Defendants had each provided to Dr. Adams and other medical providers: reporting unpaid medical bills under $500 on consumer credit reports. Defendants' agreement similarly caused—intentionally, directly and proximately—a reduction in the number of medical bills under $500 that Dr. Adams was able to collect, and will be able to collect, and increases Dr. Adams's costs to attempt to collect payment of such bills. Dr. Adams seeks damages in an amount to be proven at trial under Section 4 of the Clayton Act (codified at 15 U.S.C. § 15), on behalf of himself and the Nationwide Class.

80.     Defendants' services are transacted in interstate commerce. Defendants engaged in conduct inside the United States that caused direct, substantial, intentional, and reasonably foreseeable anticompetitive effects upon interstate commerce within the United States. The activities of Defendants were within the flow of interstate commerce of the United States and these activities were intended to have, and did have, a substantial effect on interstate commerce of the United States.

81.     The restrained trade affects interstate commerce for several reasons, including because patients will pay fewer medical bills, medical providers such as Dr. Adams will receive payment of fewer medical bills and incur increased costs to collect payment of medical bills, and the transaction of services between Dr. Adams's practice and the Three Credit Reporting Agencies spans state lines. Dr. Adams's practice is located in California and Defendants have nationwide operations. In addition, Equifax's principal place of business is in Georgia and TransUnion's principal place of business is in Illinois.

82.     There are no procompetitive benefits of Defendants' agreement, nor was there a legitimate or sufficient business justification. Any ostensible procompetitive benefit was pretextual or could have been achieved by less restrictive means.

83.     Dr. Adams's and Class Members' injuries are of the type the antitrust laws were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

84.     Each Defendant is jointly and severally liable for the harm caused by its conduct from the time they announced their conspiracy to the present.

**CLASS ACTION COMPLAINT**
*Adams v. Experian Information Solutions, Inc.*

## COUNT II

## VIOLATIONS OF THE CARTWRIGHT ACT,
## CAL. BUS. & PROF. CODE § 16720, *ET SEQ.*

85.     Dr. Adams re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1–85 as if fully set forth herein.

86.     This claim is brought against all Defendants by Dr. Adams individually and on behalf of the California Class.

87.     Defendants entered into and engaged in unlawful concerted action that unreasonably restrained trade in violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*

88.     Defendants agreed not to report unpaid medical bills under $500 on consumer credit reports.

89.     Defendants' agreement restrained trade in the market for providing and receiving medical-debt information for the purpose of reporting it on consumer credit reports. Defendants no longer compete between themselves as to whether to include, and how to account for, medical debts under $500 on the consumer credit reports they each publish. Defendants' agreement devalues, in an equal way, the service that the Defendants had each provided to Dr. Adams and other medical providers.

90.     Defendants' agreement constitutes a *per se* violation of the Cartwright Act, and is a violation of the Cartwright Act according to the Rule of Reason.

91.     There are no procompetitive benefits of Defendants' agreement, nor was there a legitimate or sufficient business justification. Any ostensible procompetitive benefit was pretextual or could have been achieved by less restrictive means.

92.     Defendants' agreement intentionally, directly and proximately caused the reduction in value of the service that Defendants had each provided to Dr. Adams and other medical providers: reporting unpaid medical bills under $500 on consumer credit reports. Defendants' agreement similarly caused—intentionally, directly and proximately—a reduction in the number of medical bills under $500 that Dr. Adams was able to collect, and

20

will be able to collect, and increases Dr. Adams's costs to attempt to collect payment of such bills. Dr. Adams seeks damages in an amount to be proven at trial, on behalf of himself and the California Class.

93.     Dr. Adams's and Class Members' injuries are of the type the Cartwright Act was designed to prevent, and flow from that which makes Defendants' conduct unlawful.

94.     Each Defendant is jointly and severally liable for the harm caused by its conduct from the time they announced their conspiracy to the present.

## PRAYER FOR RELIEF

Plaintiff Dr. Adams and the Class Members seek the following relief:

    a.   Certification of the Classes;

    b.   Award Dr. Adams and the Class Members treble damages for the injuries they suffered as a result of Defendants' unlawful conduct;

    c.   Award to Dr. Adams and Class Members their costs of suit, including reasonable attorneys' fees and expenses;

    d.   Order that Defendants, their directors, officers, parents, employees, agents, successors, members, and all persons in active concert and participation with them be enjoined and restrained from, in any manner, directly or indirectly, committing any additional violations of the law as alleged herein; and

    e.   Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues that can be tried to a jury.

21

**CLASS ACTION COMPLAINT**

*Adams v. Experian Information Solutions, Inc.*

1    Date: August 22, 2023                          Respectfully submitted,

2
                                                    *s/ Michael Merriman*
3                                                   Michael Merriman
                                                    HILGERS GRABEN PLLC
4                                                   655 West Broadway, Suite 900
                                                    San Diego, CA 92101
5                                                   Telephone: 619.369.6232
                                                    mmerriman@hilgersgraben.com
6
                                                    Bennett Rawicki
7                                                   (*pro hac vice to be filed*)
                                                    Jon B. Hyland
8                                                   (*pro hac vice to be filed*)
                                                    HILGERS GRABEN PLLC
9                                                   7859 Walnut Hill Lane, Suite 335
                                                    Dallas, TX 75230
10                                                  Telephone: 469.640.6842
                                                    brawicki@hilgersgraben.com
11                                                  jhyland@hilgersgraben.com

12                                                  Michael Burns
                                                    (*pro hac vice to be filed*)
13                                                  HILGERS GRABEN PLLC
                                                    601 Pennsylvania Avenue, Suite 900
14                                                  Washington, D.C. 20004
                                                    Telephone: 202.985.1664
15                                                  mburns@hilgersgraben.com

16                                                  Jordana R. Sternberg
                                                    (*pro hac vice to be filed*)
17                                                  HILGERS GRABEN PLLC
                                                    1230 Peachtree Street, N.E.
18                                                  19th Floor
                                                    Atlanta, GA 30309
19                                                  Telephone: 404.793.1763
                                                    jsternberg@hilgersgraben.com
20
                                                    *Counsel for the Plaintiff and*
21                                                  *the Proposed Classes*

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**
*Adams v. Experian Information Solutions, Inc.*